UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Anthony LoMonaco and AJL Enterprises, Inc.,

                    Plaintiff,                    CV-06-2609 (CPS)

    - against -                                   MEMORANDUM OPINION
                                                  AND ORDER
E. Aaron Enterprises, Inc., Grant Paper
Company, Inc., Aaron Direct, Alliance
Pulp & Paper, and Priority Papers, d/b/a
The Aaron Group of Companies,

                    Defendants.

----------------------------------------X

SIFTON, Senior Judge.

     Plaintiffs Anthony LoMonaco ("LoMonaco") and AJL

Enterprises, Inc. ("AJL") commenced this action on April 19, 2006

by filing a complaint in the Supreme Court of the State of New

York, Suffolk County, against defendants E. Aaron Enterprises,

Inc., Grant Paper Company, Inc., Aaron Direct, Alliance Pulp &

Paper, and Priority Papers, d/b/a the Aaron Group of Companies

("the Aaron Group") alleging that defendants breached a contract

with the plaintiffs by failing to make certain payments called

for under the contract.  Specifically, plaintiffs seek

$969,500.00 and other appropriate relief for damage caused by

defendants' breach.  On May 23, 2006, defendants removed this

action to federal court alleging diversity jurisdiction pursuant

to 28 U.S.C. §1332(a).  Defendants filed their Answer and

Counterclaim on June 6, 2006, alleging breach of contract, unjust

enrichment, and fraudulent inducement, among other claims.  Now before this Court is defendants' motion to transfer the action to the Eastern District of Pennsylvania ("EDPA").  For the reasons set forth below, the defendants' motion to transfer venue is denied.

## BACKGROUND

The following facts are drawn from the parties' submissions in connection with this motion.  Disputes are noted.

Plaintiff LoMonaco is an individual domiciled in Suffolk County, New York.  Plaintiff AJL Enterprises, Inc. is a corporation incorporated in New York and with its principal place of business in New York.  The defendants are an affiliated group of corporations doing business as the Aaron Group.  Mindy Aaron, Secretary and Treasurer of the Aaron Group, states that all the corporate defendants are incorporated in Pennsylvania and their principal place of business is in Pennsylvania.  Plaintiffs state in their Complaint that the Aaron Group does business in New York.  The Aaron Group alleges in its Answer that "certain of the corporate entities have customers located in New York."

Plaintiff LoMonaco entered into the agreement with the defendants which forms the basis of this lawsuit on April 9, 2003.  Under the agreement, the Aaron Group hired LoMonaco to act, individually and through his wholly owned company, AJL, as a sales representative for the Aaron Group.  The agreement also

expressed the Aaron Group's intention to establish an office in New York City.

Counsel for plaintiffs states in his Certification in opposition to this motion that defendants initiated the contract by soliciting the plaintiff in New York. Mindy Aaron says in her Certification in support of the motion that the agreement was drafted in Pennsylvania and executed by the Aaron Group in Pennsylvania. She also states that LoMonaco "had some negotiations over the telephone with Gene Aaron (who lives and works in Pennsylvania)." LoMonaco notes that solicitation by the defendants occurred over an extended period of time. He also states that the principal negotiator for the Aaron Group, Drew Aaron, who operated corporate defendant Aaron Direct through a home office in New York, negotiated in person and via telephone in New York State. Drew Aaron operated corporate defendant Aaron Direct through a home office in New York. Mindy Aaron states that "Aaron Direct is a trade name for Defendant E. Aaron Enterprises, Inc. and . . . is not a separate legal entity," and that plaintiff's conversations with Drew Aaron about the agreement "were reported to and overseen by employees at Defendants' corporate offices in Pennsylvania."

The agreement became effective on May 19, 2003, after the parties executed the agreement, when LoMonaco terminated his employment with a competitor of the Aaron Group.

The plaintiff's primary duties were performed in New York State in a home office, and most of plaintiff's accounts were located in New York.  LoMonaco met with Drew Aaron exclusively in New York at Aaron's New York home office.  In addition, LoMonaco met with customers in several States within his sales territory, including Pennsylvania.  Mindy Aaron says in her Certification that "[a]ll administrative support for LoMonaco's activities was performed in Pennsylvania."  Plaintiff states that the Aaron Group employed a liaison, Maryann Dorff between LoMonaco and corporate headquarters in Pennsylvania, located in New York.

Evidence of work performed by LoMonaco is located in both New York and Pennsylvania.  All of plaintiff's records documenting his employment with the Aaron Group are presently located in New York.  According to Mindy Aaron, documentation in Pennsylvania includes correspondence with customers, records of sales processing and support, billing, order information, and records of disputes with clients brought in by LoMonaco.

The parties dispute the extent to which LoMonaco performed pursuant to the agreement between May 19, 2003 and April 19, 2004.  Defendants do not dispute LoMonaco's statement that he was compensated for services rendered during this period.  LoMonaco claims that the Aaron Group breached the agreement on April 20, 2004, resulting in damage to plaintiffs, and that the Aaron Group owes LoMonaco and AJL the sum of $969,500.

**DISCUSSION**

28 U.S.C. § 1404(a) provides:

> For the convenience of the parties and witnesses, in the
> interest of justice, a district court may transfer any civil
> action to any other district or division where it might have
> been brought.

The statute affords district courts discretion "to adjudicate
motions for transfer according to an individualized, case-by-case
consideration of convenience and fairness." *Stewart
Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988). *See
also Filmline (Cross-Country) Productions, Inc. v. United States
Corp.*, 865 F.2d 513, 520 (2d Cir. 1989). When deciding whether
to transfer venue, the following factors are appropriately
considered:

> (1) convenience of the parties; (2) convenience of material
> witnesses; (3) the availability of process to compel
> attendance of unwilling witnesses; (4) the cost of
> obtaining the presence of witnesses; (5) the relative ease
> of access to sources of proof;(6) calendar congestion; (7)
> where the events in issue took place; and (8) the interests
> of justice in general.

*Goodman v. Schmalz*, 80 F.R.D. 296, 300-01 (E.D.N.Y. Nov. 2,
1978). Also of importance is the plaintiff's choice of forum.
*See*, *e.g.*, *Hutton v. Priddy's Auction Galleries, Inc.*, 275
F.Supp.2d 428, 440 (S.D.N.Y. 2003); *Viacom International, Inc. v.
Melvin Simon Productions, Inc.*, 774 F.Supp. 858, 867 (S.D.N.Y.
1991). Plaintiff's choice is entitled to more weight when the
forum is the plaintiff's home or the place where the operative

facts occurred. *Chet Baker Enterprises, LLC v. Fantasy, Inc.* 257 F.Supp.2d 592, 597 (S.D.N.Y. Sept. 26, 2002). The moving party has the burden to show clearly that the proposed transfer would be more convenient and would better serve the interests of justice. *Goodman*, at 301.

A threshold question in considering a motion to change venue is whether the claim could have been initiated in the proposed transferee jurisdiction. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Venue is governed by 28 U.S.C. § 1391 in cases where the court's subject matter jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. Pursuant to § 1391(a), diversity actions may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Under 28 U.S.C. § 1332(a), the EDPA would have diversity jurisdiction over this case. The parties are citizens of different states, domiciled or incorporated in different states, and the amount in controversy exceeds the minimum amount required for diversity jurisdiction. As specified under 28 U.S.C. § 1391(c), "[f]or purposes of venue under this

chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Plaintiff does not dispute that the corporate defendants are incorporated in Pennsylvania and that Pennsylvania is each defendant's principal place of business. The defendants would therefore be subject to personal jurisdiction in Pennsylvania pursuant to 28 U.S.C. § 1391(c). Because this suit could have been initiated in the EDPA, a motion to transfer venue is permissible. Accordingly, analyzed below are the relevant factors on whether transfer would be convenient for the parties and witnesses and in the interest of justice.

*(1) Convenience of the Parties*

The corporate defendants are all incorporated in and maintain their principal place of business in Pennsylvania. Plaintiff LoMonaco is domiciled in New York, and AJL is incorporated in New York. Having initiated this suit in New York, plaintiffs have implied that New York is a convenient jurisdiction for them. *Cf. Chet Baker Enterprises*, at 596 (noting that plaintiffs bringing suit outside their home state decreased the likelihood of inconvenience to plaintiffs caused by transfer). Defendants outnumber plaintiffs, and LoMonaco has demonstrated a willingness to travel to Pennsylvania. He attended meetings in Pennsylvania and included that state in his

sales territory.  *See Hutton v. Priddy's Auction Galleries, Inc.*, 275 F.Supp.2d 428, 441 (S.D.N.Y. June 27, 2003) (noting plaintiff's willingness to travel to transferee state "for business purposes").  Defendants, however, have not articulated any particular hardship to themselves resulting from having to travel to New York or Pennsylvania.  LoMonaco, by contrast, notes that his financial resources are limited.  *See Goodman*, at 301, n.8 (examining specific hardship to each party caused by travel to transferee jurisdiction and taking into account alleged financial hardship).  The relative convenience to parties therefore weighs in favor of the plaintiffs.

*(2) Convenience of Material Witnesses*

     The convenience of both party and non-party witnesses is perhaps the most significant factor in deciding whether to grant a motion to change venue.  *Chet Baker Enterprises*, at 597 (citing *Aerotel, Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 197 (S.D.N.Y. 2000)).  Here, the Aaron Group says that most of its witnesses are in Pennsylvania while LoMonaco states that nearly all of plaintiffs' witnesses are in New York.  Witnesses whose testimony would be relevant to the claims and counterclaims in this suit are located in both states.  Drew Aaron, the individual with whom LoMonaco had the most contact, is in New York.  Plaintiffs also expect to call a former Aaron Group employee domiciled in New York and customers' account representatives in New York to

demonstrate LoMonaco's fulfillment of contractual obligations.
Movants, however, also state that at least eight relevant
witnesses work and reside in Pennsylvania.  Neither party
provides actual numbers of witnesses likely to testify nor
conveys any particular hardship that may result from witnesses
having to travel to another venue.  *Jones Knitting Corp. v. A.M.*
*Pullen & Co.*, 50 F.R.D. 311, 316-17 (S.D.N.Y. June 24, 1970).
LoMonaco states that the agreement was principally negotiated in
New York through the Aaron Group's agent, Drew Aaron.  LoMonaco
executed the agreement in New York.  Yet The Aaron Group drafted
and executed the agreement in Pennsylvania.  Based on this set of
circumstances, defendants have not met their burden of clearly
showing that Pennsylvania is a more convenient venue for
witnesses than New York.

*(3) Availability of Process to Compel Unwilling Witnesses*

Defendants suggest in their Memorandum in support of their
motion that former officers or employees of the Aaron Group may
not be subject to process in New York.  Defendants have not,
however, stated that any relevant witnesses are no longer
employed by the Aaron Group nor explained why any witness would
be unwilling to appear voluntarily.  *See Goodman*, at 301, n.8;
*Jones Knitting Corp.*, at 317.  Speculation as to the availability
of witnesses is not sufficient to warrant transfer to another
venue.

*(4) Cost of Obtaining the Presence of Witnesses*

As noted, neither party has made clear how many witnesses they expect to call, and have alleged inconvenience to witnesses in a conclusory manner.  Accordingly, defendants have not met their burden of showing clearly that venue should be transferred based on this factor.

*(5) Relative Ease of Access to Sources of Proof*

While defendants state that a considerable amount of documentation, including correspondence, sales processing, sales support, and documentation concerning disputes with customers, is in Pennsylvania, defendants do not directly address the ease of access to such documentation.  LoMonaco's records are in New York, but LoMonaco's counsel states without contradiction that records are "fully transient and not voluminous."  Without more statements from defendants to the contrary, defendants have not demonstrated that ease of access to sources of proof would be more convenient in Pennsylvania than in New York.

*(6) Calendar Congestion*

This factor is a matter of trial efficiency.  Defendants have noted the different average time periods in which civil cases are resolved in the EDPA and the EDNY.  Given the amounts in controversy here and the nature of the claims, this case would not likely impose an unusual burden on this district.  Moreover, the presence of documents and key witnesses in New York would

enhance the efficiency of trial in New York. Concerns about trial efficiency are not substantial enough in this case to compel transfer to another venue.

*(7) Locus of Operative Facts*

Because the operative facts of this case have a material connection to this district, plaintiff's choice of forum carries more weight than if there were limited or no connection to this district. *Goodman*, at 302. Plaintiffs are domiciled or incorporated in New York, the disputed agreement was partly negotiated and executed in New York, and most of the agreement was allegedly performed in New York. Because New York has greater connection to this case than Pennsylvania, plaintiff's choice of New York as the forum is not overcome by the defendant's links to Pennsylvania.

*(8) Interests of Justice*

The relevant factors weigh in favor keeping the case in New York, the plaintiffs' choice of forum. Deference to the plaintiffs' choice of forum, particularly when the plaintiffs are domiciled or incorporated in that forum's district, further affirms the EDNY as the appropriate jurisdiction. *Chet Baker Enterprises*, at 597. Accordingly, I conclude that adjudicating this suit here is convenient to the parties and witnesses, and in the interests of justice.

**CONCLUSION**

For the reasons set forth above, the Aaron Group's motion to change venue is denied.

The Clerk is directed to transmit a copy of the within to the parties and to the Magistrate Judge.


SO ORDERED.

Dated:     Brooklyn, New York
           August 22, 2006


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge